[Dkt. No. 23]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

RICHARD HUDSON,

Plaintiff,

v.

ABSECON EMERGENCY SERVICES,
INC.; JOHN DOES 1-3,

Defendants.

Civil No. 14-6419 (RMB/AMD)

**OPINION**

APPEARANCES:

**Jenna M. Cook**
Law Offices of Jenna M. cook
1201 New Road, Suite 230
Linwood, NJ 08221
       *Attorney for Plaintiff*

**Christina Lynn Saveriano**
**Suzanne M. Marasco**
Hill Wallack, LLP
21 Roszel Road
CN 5226
Princeton, NJ 08543-5226
       *Attorney for Defendant*

**BUMB**, United States District Judge:

This matter comes before the Court upon a motion for

summary judgment by Defendant Absecon Emergency Services

("Defendant" or "Absecon EMS") with regard to Plaintiff Richard

Hudson's claims against it for violation of the Fair Labor

Standards Act ("FLSA"), unjust enrichment, and violation of New

Jersey's Conscientious Employee Protection Act ("CEPA").  Motion

for Summary Judgment [Dkt. No. 23].  For the reasons set forth below, the Court determines that Plaintiff is exempt from the FLSA and accordingly, summary judgment in favor of Defendant on that cause of action is proper.  The Court declines to exercise jurisdiction over the remaining state-law causes of action. Those claims will be remanded to the Superior Court of New Jersey Law Division, Atlantic County.

I.   **FACTUAL BACKGROUND**

   A. **Plaintiff's Employment with Absecon EMS**

   This case arises from Plaintiff's employment with and termination from Absecon EMS, a charitable organization which provides emergency medical services to the sick and injured. Def.'s St. of Undisputed Material Facts & Pl.'s Resp. ("SOF") ¶ 2 [Dkt. Nos. 23-2, 33].  Absecon EMS is run at a high-level by a board of trustees which, at the start of the relevant period in 2010, was comprised of Matthew Hartman, William Busch, Walter Young, Erin Gorman, and a member of the local VFW.  Pl.'s St. of Undisputed Material Facts & Def.'s Resp. ("Counter SOF") ¶ 6 [Dkt. Nos. 32, 38-1].[1]

   Between May 2006 and September 2013, Plaintiff served in the full-time position of "Chief of Absecon EMS."  SOF ¶ 1.  In his position as Chief, Plaintiff was a salaried employee,

---

[1] Defendant contests whether, beginning in 2013, Mr. Young and Ms. Gorman were still acting as trustees.  Counter SOF ¶ 6.

earning $48,880 per year.  Id. ¶ 3.  Plaintiff received the same
amount of compensation regardless of the hours that he worked.
Id. ¶ 3.[2]  This policy – i.e. no overtime benefits for hours
worked over 40 per week – is consistent with Absecon EMS's
General Order #15, effective June 5, 2006, which dictates that
when full-time employees were hired at Absecon EMS, "they are
hired as executive employees . . . with no cash overtime."
Def.'s Ex. E.  Notably, this document also states that it was
approved by Plaintiff as the Chief.  Id.  Plaintiff additionally
testified at his deposition that "all officers" at Absecon EMS
"are exempt employees."  Def.'s Ex. C at 56:25-57:3.

Plaintiff testified during his deposition that his job
duties as Chief were "[o]verall operations of the squad."
Def.'s Ex. A at 25:11.  The by-laws are consistent, and state:

> The Chief will be in charge of the Squad in regards to
> its operations.  The Chief will have the final
> responsibility for the proper operation and staffing of
> ambulances.  The Chief will act as a liaison
> representative, in conjunction with the President,
> between the Squad and all other organizations or
> individuals.  The Chief will also ensure that all
> members' certification cards are current.  The Chief,
> with the assistance of the Assistant Chief, will be
> responsible for retrieving all property of the Squad's
> from defunct members.  The Chief will also be authorized
> to countersign all checks drawn from Squad accounts.

---

[2] Plaintiff disputes whether he should have received overtime —
an essential portion of his Fair Labor Standards Act claim.  Id.

3

Def.'s Ex. B Art. 5, § 5(c).  Although Plaintiff's counsel disputes some of the nuances of Plaintiff's specific duties,[3] it is not genuinely disputed in the record that:

- Plaintiff was in charge of discipline of employees. See Def.'s Ex. A at 25:14-17 (Q: Were you in charge of discipline of employees?  [Plaintiff]: Yes.").

- Plaintiff acted as a liaison representative between the squad and other organizations and individuals. Counter SOF ¶ 20.

- Plaintiff was able to make hiring and firing decisions, although the Board may have had a role in the process.  See Def.'s Ex. A at 25:12-14 ("Q: Were you in charge of hiring and firing employees? [Plaintiff]: Yes.); Def.'s Ex. F at 13:10-12 ("Q: Was Mr. Hudson authorized to hire people?  [Mr. Young:] Yes . . . But he was supposed to go through the trustees.").

- Plaintiff was in charge of annual reviews of employees See Def.'s Ex. A at 25:18-20 ("Q: Were you in charge of annual reviews of employees? [Plaintiff]: Yes.").

- Plaintiff was responsible for maintaining all employees' personnel files, including his own.  See Def.'s Ex. A at 81:17-23 ("Q: As the chief were you responsible for maintaining the personnel files of employees? [Plaintiff]: Yes.  Q:  Were you responsible for maintaining your own personnel file?  [Plaintiff]: Yes.").

- Employees were expected to take their own compensation issues to Plaintiff rather than bringing them to the Trustees directly.  Def.'s Ex. C at 55:21 ("[Plaintiff]: All the employees report to me and I

---

[3] Specifically, Plaintiff argues that Mr. Young conducted payroll operations for the squad, and the Board had a role in the discipline, hiring and firing process.  The remainder of Plaintiff's contentions with regard to Paragraph 9 of Defendant's Local Rule 56.1 Statement do not take genuine issue with Plaintiff's duties but assert what the duties of other employees or trustees were.

report to the trustees unless the trustees – unless an
employee wants to fight their termination, they can
bring that to the Board of Trustees.").

- Plaintiff was in charge of directing where Absecon
  EMS's resources would be allocated, with regard to
  dispatching of emergency vehicles, and dealt with
  servicing of the vehicles.  Def.'s Ex. D at 59:20-25;
  Def.'s Ex. G at 34:2-10.

- Plaintiff scheduled work shifts for his employees.
  Def.'s Ex. D at 59:22.

- Plaintiff had the authority to countersign checks and
  was able to make purchases for the squad, and did so.
  Def.'s Ex. G at 35:11-18; Def.'s Ex. F at 14:4-15:5.

- Plaintiff would occasionally respond to emergency
  calls, sometimes counting as an EMT on staff, and
  sometimes not.  Pl.'s Ex. 1 at 29:21-30:2.

In late 2009, Plaintiff's family purchased a pure-bred
golden retriever as a family pet.[4]  SOF ¶ 39.  Several months
after the purchase, Plaintiff requested that his dog be
permitted to be trained to serve as Defendant's search and
rescue dog.  SOF ¶¶ 40, 43.  Plaintiff and Mr. Hartman believed
having a search and rescue dog would be good for public
relations for Absecon EMS.  Def.'s Ex. A at 122:22; Def.'s Ex. G
at 70:6-11.  Although the dog was permitted to serve as the
search and rescue dog, it was not purchased for that purpose and

---

[4] Although Plaintiff contests that the dog was purchased solely
by Plaintiff's wife, Plaintiff does not contest that the dog was
purchased as a "family pet."  SOF ¶¶ 39, 40.

no other member of the squad had access to the dog.  SOF ¶ 42.[5]
It is disputed whether Plaintiff was permitted to do so by the
Trustees, but Plaintiff put in 18-hours per month of comp time
for the dog's care and also all costs for care of the dog on the
squad credit card.  Pl.'s Ex. 2 at 72:7-19.  Plaintiff states
that he represented to Mr. Hartman that he had run the issue of
comp time for the dog care by him; Mr. Hartman was unable to
recall that conversation.  Id.

## B. **Financial Issues and Impropriety**

Although the parties dispute the exact cause and nature, it
is undisputed that Absecon EMS was experiencing some financial
hardship during and after 2010.  SOF ¶ 11.  Indeed, Plaintiff
loaned money to the squad on at least one occasion to make
payroll.  Pl.'s Ex. 1 at 45:22-46:1.  Plaintiff also testified
that in 2011, he saw the tax return for Absecon EMS and wondered
why it was making so much money, but Mr. Young – who was
treasurer – insisted Absecon EMS had no money.  Counter SOF ¶
36.  These concerns persisted in 2012 and 2013.  Id. at ¶ 37.

Defendant and the Trustees who were deposed point to more
benign sources, but Plaintiff contends that Mr. Young committed
financial improprieties and Plaintiff was a long-time whistle

---

[5] Plaintiff's response to Paragraph 42 of Defendant's Local Rule
56.1 statement does not sufficiently dispute this fact for
purposes of summary judgment.

blower with regard to these.  See, e.g. Pl.'s Ex. 2 at 18:1-16
(listing financial problems Plaintiff brought to Mr. Hartman's
attention).  According to Mr. Hartman, due to his close
relationship with Plaintiff, these complaints were brought
directly to him in phone calls and personal conversations.  Id.
at 19:2-10.  These reported financial improprieties ranged from
bouncing of payroll checks to late bill payments. Id. at 18:1-
16.  According to Plaintiff, the late bills at one point may
have brought Defendant's workers' compensation insurance into
jeopardy.  Id. 20:19-21:3.  Moreover, during a time of financial
turmoil for Defendant, it was also revealed that Mr. Young made
financial donations with Absecon EMS's money to a basketball
team that was coached by his daughter and fellow trustee, Ms.
Gorman.[6]  Id. at 22:24-23:2.  With regard to the donation, Mr.
Hartman testified at his deposition that he believed this may
have amounted to a violation of the squad's operating procedures
because the expenditure was not run through the Board.  Id. at
23:11-16.  Mr. Young testified that the donation was made with
the approval of Mr. Hartman.  Pl.'s Ex. 3 at 25:20-26:2.
Plaintiff also testified to uncovering a loan secured by Mr.

---

[6] Defendant disputes whether this information was discovered
solely by Plaintiff, but does not dispute the essential fact of
the donation's occurrence.  Counter SOF ¶ 50.

Young on behalf of Absecon EMS from the VFW of which Mr. Busch and Mr. Hartman were unaware.  Counter SOF ¶ 45.

In April or May of 2013, Plaintiff and his co-worker Jessica Gragg demanded that the financial books and records of Defendant be turned over to them for review or they would quit. Counter SOF ¶ 48.  Upon Mr. Young's return from an extended vacation in Florida, during which time Plaintiff told members of the community that Mr. Young was "stealing money . . . and taking the books to Florida to cook [them]," the financial books and records were given to the squad, including Plaintiff and Ms. Gragg.  Counter SOF ¶ 47, 49.  While in Florida, Mr. Young testified, Plaintiff called him constantly to "bug" him about financial issues.  Counter SOF ¶ 87.  As a result, Mr. Young called Mr. Hartman from Florida to resign as a trustee and stated he would be turning over all the financial records. Counter SOF ¶¶ 90, 91.  Mr. Hartman asked him to remain.  Id.

After Plaintiff and Ms. Gragg obtained the financial records upon Mr. Young's return, the donation to the Absecon basketball team was discovered.  Counter SOF ¶ 50.  Plaintiff testified that he complained to Mr. Hartman, Mr. Busch and the VFW member of the board about Mr. Young's donation to the team at a time when the squad was bouncing payroll checks.  Counter SOF ¶ 58.  Finally, one week before he was ultimately laid off from Absecon EMS, Plaintiff reported to the trustees that he had

8

not been properly compensated for the care and maintenance of his dog.  Counter SOF ¶ 61.

During his deposition, Mr. Hartman noted that Mr. Young and Ms. Gorman, who were previously a part of a functioning board, were no longer permitted to take part in board decisions due to the allegations of impropriety and Mr. Young's very strained relationship with Plaintiff.  Pl.'s Ex. 2 at 15:4-12; see also id. at 16:13-22 ("As I understood it, Richard – Mr. Hudson didn't agree with some of the practices that Mr. Young was using in terms of paying the bills and when they got paid or paying them late, and made that known to people outside of the organization, which in turn was indicated to Mr. Young, through the VFW, our parent organization, where Mr. Young is also a life member.").  Despite the financial issues which Plaintiff claims he brought to the attention of the Absecon EMS board, Mr. Young was not terminated nor did he resign, although he was deliberately distanced by Mr. Hartman from Defendant's business as a result.  Id. at 64:13-65:5.  Additionally, there has been no formal investigation by Absecon EMS of Mr. Young's conduct, other than a records review.  Id. at 65:11-19.

## C. **Plaintiff's Termination**

After being provided with Absecon EMS's financial information in June 2013, Plaintiff agreed that Defendant did not have any money.  SOF ¶ 15.  As Defendant sought to take some

of the financial pressure off itself by cutting costs, Plaintiff offered to reduce his salary to help.  Pl.'s Ex. 2 at 46:18-20. It is undisputed that the Defendant was taking other cost saving measures at this time.  For example, shifts were cut back.  Id. at 50:10-19.  Defendant began using volunteers to fill other shifts and asked employees to take voluntary layoffs.  SOF ¶ 17. Ultimately, Defendant ended up with only two full-time employees by September 2013.  Id. ¶ 19.

In his deposition, Mr. Hartman testified that while Plaintiff had suggested a reduction of pay for himself, "we were looking at either laying off all personnel and shutting down the place or finding another way to reduce the expenditures, and the highest paid employee[, Plaintiff,] is where we made that choice."  Id. at 52:22-53:3.  Ultimately, in September 2013, Plaintiff's employment with Defendant was terminated.  Def.'s Ex. I.  Mr. Busch wrote in a letter to Plaintiff that the decision was "necessitated by our finances."  Id.  The letter additionally states that the squad "doesn't want to have any additional expenses for Binkey the Search and Rescue Dog.  I believe that you will be keeping her and you may do so with the blessing of the Trustees, but we don't want to expend any additional money for training, transportation or care of this animal."  Id.  At the time of his termination, Mr. Hartman advised Plaintiff that "the intention was in six months to

10

review the financials and if we were able to, we would bring him back." Id. at 56:18.  Ultimately, this plan was dashed, as the financials worsened.  Id. at 56:19-25.

The exact circumstances of the decision to terminate Plaintiff are disputed by the parties.  Mr. Hartman testified at his deposition that Mr. Young was excluded by Mr. Hartman and Mr. Busch from the decision to lay off Plaintiff to avoid the problematic acrimony between Plaintiff and Mr. Young.  Counter SOF ¶ 96.  Nevertheless, the first discussion in the record regarding Plaintiff's layoff was one week after Mr. Young returned from Florida.  Counter SOF ¶ 93.  Moreover, Mr. Young testified, in contradiction of Mr. Hartman, that he did, in fact, participate in the decision to lay off Plaintiff.  Counter SOF ¶ 97, 98.  The meeting notes from the discussion to layoff Plaintiff were never produced in discovery because Defendant contends that Mr. Busch was unable to locate his records prior to the time period month after Plaintiff was terminated. Counter SOF ¶¶ 109, 110.

**D. Procedural History**

Plaintiff filed this action in the Superior Court of New Jersey Law Division, Atlantic County on August 29, 2014.  Notice of Removal Ex. A.  The Complaint alleges causes of action for unjust enrichment and violation of the FLSA for failure to compensate Plaintiff for time he spent working for Defendant.

Id. ¶ 17-30.  The Complaint additionally alleges a violation of
CEPA, as Plaintiff contends he was terminated for engaging in
whistle blowing activity.  On October 16, 2014, Defendant
removed the case to this Court, relying upon federal question
jurisdiction stemming from the FLSA claim.  Notice of Removal ¶
3.  On February 25, 2016, after the conclusion of discovery,
Defendant moved for summary judgment.

## II.  <u>LEGAL STANDARD</u>

Summary judgment shall be granted if "the movant shows that
there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R.
Civ. P. 56(a).  A fact is "material" if it will "affect the
outcome of the suit under the governing law . . . ."  <u>Anderson v.
Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A dispute is
"genuine" if it could lead a "reasonable jury [to] return a
verdict for the nonmoving party."  <u>Id.</u>

When deciding the existence of a genuine dispute of
material fact, a court's role is not to weigh the evidence; all
reasonable "inferences, doubts, and issues of credibility should
be resolved against the moving party."  <u>Meyer v. Riegel Prods.
Corp.</u>, 720 F.2d 303, 307 n.2 (3d Cir. 1983).  However, a mere
"scintilla of evidence," without more, will not give rise to a
genuine dispute for trial.  <u>Anderson</u>, 477 U.S. at 252.  Further,
a court does not have to adopt the version of facts asserted by

the nonmoving party if those facts are "utterly discredited by the record [so] that no reasonable jury" could believe them. Scott v. Harris, 550 U.S. 373, 380 (2007).  In the face of such evidence, summary judgment is still appropriate "where the record . . . could not lead a rational trier of fact to find for the nonmoving party . . . ." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  Then, "when a properly supported motion for summary judgment [has been] made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'"  Anderson, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).  The non-movant's burden is rigorous: it "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. Orsatti v. N.J. State Police, 71 F.3d 480, 484 (3d Cir. 1995); Jackson v. Danberg, 594 F.3d 210, 227 (3d Cir. 2010) (citing Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 228

13

(3d Cir. 2009)) ("[S]peculation and conjecture may not defeat summary judgment.").

## III. <u>ANALYSIS</u>

### A. <u>FLSA Claim</u>

Plaintiff brings a cause of action alleging that the failure to pay him certain overtime pay amounts to a violation of the Fair Labor Standards Act.  Under the FLSA, 29 U.S.C. § 207(A), "employees are entitled to overtime compensation, at the rate of one and one-half times the regular rate, for time worked in excess of forty hours per week." <u>Guthrie v. Lady Jane Collieries, Inc.</u>, 722 F.2d 1141, 1144 (3d Cir. 1983).  The FLSA "establishes certain minimum labor standards necessary to aid the unprotected, unorganized, and lowest paid of the nation's working population . . . who lack sufficient bargaining power to secure for themselves a minimum subsistence wage." <u>McDowell v. Cherry Hill</u>, Civ. No. 04-1350 (JBS), 2005 WL 3132192, at *5 (D.N.J. Nov. 21, 2005).  However, "[e]xempt from [the overtime] provision is any 'employee employed in a bona fide executive, administrative, or professional capacity." <u>Guthrie</u>, 722 F.2d at 1143.  These exemptions for employees are, however, narrowly construed against the employer. <u>Martin v. Cooper Elec. Supply Co.</u>, 940 F.2d 896, 900 (3d Cir. 1991) (quoting <u>Arnold v. Ben Kanowsky, Inc.</u>, 361 U.S. 388 (1960)).  It is the employer's burden to demonstrate "plainly and unmistakably" that the

14

employee is subject to an FLSA exemption.  Mazzarella v. Fast
Rig Support, Inc., 823 F.3d 786, 790 (3d Cir. 2016) (quoting
Packard v. Pittsburgh Transp. Co., 418 F.3d 246, 250 (3d Cir.
2005)).

    In determining the applicability of FLSA exemptions, the
Secretary of Labor is granted broad authority to "define and
delimit" the scope of the exemption.  29 U.S.C. § 213(a)(1); see
also McDowell, 2005 WL 3132192, at *5.  These regulations are
given controlling weight unless they are found to be arbitrary,
capricious, or contrary to statute.  Smith v. Johnson & Johnson,
593 F.3d 280, 284 (3d Cir. 2010).  Finally, in determining
whether an employee is exempt under the FLSA, "job title alone
is insufficient," but rather the salary and duties an employee
undertakes must be considered.  29 C.F.R. § 541.2.  In this
case, Defendant argues that there is no genuine dispute of fact
that Plaintiff is exempt from the FLSA on two grounds: his
status as an executive employee and his status as an
administrative employee.

    In so arguing, Defendant relies on a significantly
analogous case, McDowell v. Cherry Hill, Civ. No. 04-1350 (JBS),
2005 WL 3132192 (D.N.J. Nov. 21, 2005).  McDowell concerned the
head of a division of an emergency medical technician squad.  Id
at *1.  As Department Head, the plaintiff "was responsible for
the hiring, firing, and disciplining of employees in his

division, purchasing of supplies and all budgeting related to
emergency medical services operations among other duties." Id.
The plaintiff was paid on a salary basis and only "rarely
compensated for additional or overtime hours worked." Id.
After a reorganization began what the plaintiff termed a
diminishment of his responsibility, id. at *2, he began working
closely with a supervisor "assist[ing] him in managing and
supervising the EMTs." Id.  After discussion with his
supervisor, it was agreed the plaintiff would be responsible for
supervising and supporting a staff of 10 full-time and 35 part-
time employees, monitoring Township emergency medical services
rules and regulations, monitoring compliance with safety and
legal regulations, assisting in formulating and administering
the annual operating budget, monitoring supplies and inventory,
and performing a host of administrative tasks. Id.
Additionally, the plaintiff had substantial on-call
responsibilities, including responding to equipment issues and
last minute scheduling changes. Id. at *3.  The plaintiff
considered himself to be the second in command of the division.
Id.

The McDowell court, upon a motion for summary judgment by
defendant, determined that the plaintiff was an exempt employee,
as he qualified as both a bona fide executive and administrative
employee.  As such, the plaintiff in that case was not entitled

16

to overtime under the FLSA.  This Court is largely convinced by the reasoning in <u>McDowell</u>, and, as outlined below, also finds that Plaintiff qualifies for the executive exemption from the FLSA's overtime requirements.

### i. **Executive Exemption**

Defendant contends, and this Court agrees, that Plaintiff is exempt from FLSA overtime requirements because he was a bona fide executive employee.[7]  The general rule for exemption of executive employees for the FLSA's overtime requirements provides that:

a) The term "employee employed in a bona fide executive capacity"  . . . shall mean any employee:

1. Compensated on a salary basis at a rate of not less than $455 per week . . . exclusive of board, lodging or other facilities;

2. Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

3. Who customarily and regularly directs the work of two or more other employees; and

4. Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

---

[7] Because the Court agrees with Defendant's contention that Plaintiff is exempt from the FLSA as an executive employee, the Court does not address Defendant's second contention, that Plaintiff is exempt as an administrative employee.

29 C.F.R. § 541.100.  Plaintiff does not contest that he was compensated with a salary above the requisite level.  Pl.'s Br. 36 ("There is no dispute that plaintiff was paid a salary of not less than $455 per week plus compensatory time.").  Plaintiff does argue, however, that the remaining three elements are not met at summary judgment.  The Court addresses each in turn.

## 1. **Primary Duty**

The undisputed facts establish that Plaintiff's primary duty was "management of the enterprise."[8]   29 C.F.R. § 541.100.  With regard to Plaintiff's primary duty, this Court is to

---

[8] Management duties, as laid out in the Code of Federal Regulations:

> Generally, "management" includes, but is not limited to, activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

20 C.F.R. § 541.102.

consider the qualitative nature of the duties Plaintiff performed.  As the Third Circuit has held, the regulations set forth a "qualitative, not quantitative, test for whether an employee is a bona fide executive." Soehnle v. Hess Corp., 399 F. App'x 749, 751 (3d Cir. 2010) (holding that employee who was "sole manager" of business site exempt as an executive).  As such, "[u]nder this multi-factor quantitative test, 'primary duty' does not connote the most time-intensive of an employee's functions but instead refers to the 'principal, main, major or most important' duty performed by the employee . . . ." Id.  In considering what Plaintiff's primary duty was, the regulations provide guidance in the form of non-exhaustive factors, including: "the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee."[9]  29 C.F.R. § 541.700(a).

---

[9] The regulations make clear that while the amount of time spent is a useful benchmark for determining a primary duty, because "employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement," time alone is not the sole test and there is no firm percentage requirement.  29 C.F.R. § 541.700(b).

Looking to the undisputed facts concerning Plaintiff's duties, as set forth supra, it is clear to the Court that his primary duty was management of the enterprise.  Tellingly, in his deposition, Plaintiff summarized his job duties as "[o]verall operations of the squad."  Def.'s Ex. A at 25:11. Plaintiff had hiring and firing authority, as discussed below. Plaintiff also had authority with regard to how unemployment benefits might be granted.  When a terminated employee filed a problematic request for unemployment benefits, Ms. Gragg, the Assistant Chief, "asked [Plaintiff] what he would like to do, and he said, because it was Bill's daughter, let's give it to her."  Def.'s Rep. Ex. D at 54:23-55:1.  Additionally, Plaintiff's duties included setting the schedule to ensure that Absecon EMS was staffed.  Counter SOF ¶ 20.  Plaintiff admitted he was in charge of annual reviews of all employees.  Def.'s Ex. A at 25:18-20.  Plaintiff admitted he handled employee complaints with regard to overtime pay.  Def.'s Ex. C at 55:10-25 ("All the employees report to me [on the issue of overtime compensation.]").  Plaintiff additionally admitted that he was in charge of employee discipline, Def.'s Ex. A at 25:15-17, and Plaintiff disciplined employees for drinking on the job, including making the decision whether to terminate them. Counter SOF ¶ 100 ("Busch did not like Hudson because Hudson suspended Busch before he was a trustee for drinking alcohol

while on call."); Def.'s Ex. D at 89:11-19 (discussion with Mr.
Busch about whether to terminate his daughter for drinking on
the job).  Plaintiff had the authority to countersign checks,
Counter SOF ¶ 20, and made purchases for Absecon EMS.  See,
e.g., Def.'s Ex. F. at 14:2-15:1 (Mr. Young testifying that
Plaintiff had purchasing authority).  Plaintiff made decisions
about what equipment would be purchased and used, for instance,
purchasing $600 bicycles for the squad to be used on details.
Id.  All of these responsibilities are consistent with the
description of Plaintiff's job as Chief, see Def.'s Ex B Art. 5,
§ 5(c), and are decisively managerial in nature.  20 C.F.R. §
541.102.

Considering the above duties in light of the factors put
forth by the governing regulations, Plaintiff's job as Chief was
integral to the continued operation of Absecon EMS.  In addition
to the fact that Plaintiff oversaw the staffing and management
of the squad day-to-day, the Trustees backed off their plan to
lay off both Plaintiff and the Assistant Chief, Ms. Gragg, when
they were convinced that the squad could not operate without at
least one of the two of them operating in a full-time managerial
capacity.  Def.'s Ex. H at 60:25-61:5.  Moreover, regarding the
time spent on managerial tasks, the copious managerial tasks
outlined above required substantial time to complete, as
evidenced by Ms. Gragg's testimony that Absecon EMS needed

21

"somebody to be there more than 20 hours a week to take care of business," id., and the Trustees' immediate decision to retain Ms. Gragg to complete these duties after Plaintiff's termination in order "to make sure that the doors stayed open." Id. at 61:12-14.  The undisputed record is also very clear that while the Trustees engaged in some degree of supervision over hiring and spending, Plaintiff completed his duties largely unsupervised, and exercised a relatively unrestrained ability to manage the operations of the squad.  See Ex. B. at Art. 5, § 5(c).  Finally, and perhaps most compellingly, the record is clear that Plaintiff's wages are significantly greater than the wages paid to the rank-and-file EMT workers at Absecon EMS.  As Mr. Busch remarked in his deposition, with regard to compensating paid EMT staff "you're looking at $11 an hour as opposed to $17 an hour for [Assistant Chief Ms. Gragg]" and a salary based on a wage of $28 an hour for Plaintiff.  Def.'s Ex. D at 64:14-18.  Plaintiff's salary was based on a rate significantly more than double that of the basic EMTs, which is strongly suggestive that Plaintiff's primary duties were managerial in nature.

This Court is also unpersuaded by the fact that Plaintiff at times responded to EMT calls.  As an initial matter, Plaintiff only sometimes penciled himself into an ambulance when he drafted the schedules, and there is no apparent requirement

in the record that Plaintiff respond to calls as Chief.  Pl.'s
Ex. 1 at 29:21-30:2; Def.'s Ex. B Art. 5, § 5(c).  Indeed, this
factual scenario is not far from <u>McDowell</u>, where the plaintiff –
also the head of an EMT division – would occasionally go on
calls.  <u>McDowell</u>, 2005 WL 3132192, at *8.  Such activity did not
defeat the plaintiff's exemption there, and it does not here.
Given Plaintiff's testimony concerning his own responsibilities,
along with the testimony of the Trustees, it is clear that
Plaintiff's "principal, main, major or most important duty" was
as the by-laws put it to "be in charge of the Squad in regards
to its operations" or, as Plaintiff put it in his own words,
"overall operations of the squad."  As such, the Court
determines that Defendant has pointed to ample evidence in the
record that Plaintiff's primary duty was management of the
enterprise.

### 2. <u>Directing the Work of Two or More Others</u>

The undisputed record also establishes for purposes of
summary judgment that Plaintiff regularly directed the work of
two or more other full-time employees.  As noted, under the
applicable regulation, "To qualify as an exempt executive under
§ 541.100, the employee must customarily and regularly direct
the work of two or more other employees.  The phrase 'two or
more other employees' means two full time employees or their
equivalent.  One full-time and two half-time employees, for

example, are equivalent to two full-time employees.  Four half-time employees are also equivalent."  29 C.F.R. § 541.104(a).

Plaintiff ignores the gloss provided by the regulations on the term "two full time employees or their equivalent." Instead, Plaintiff simply argues that there were only two full-time employees, including Plaintiff, at Absecon EMS, and that there was no evidence of who's work Plaintiff directed.  Pl.'s Br. 37-38.  This argument betrays the record.  The undisputed record is clear that Absecon EMS had many part-time employees. At his deposition, Plaintiff recalled the names of at least seven part-time employees, in addition to Jessica Gragg, the full-time employee apart from Plaintiff.  Pl.'s Ex. 1 at 26:20-27:5.  Mr. Hartman testified that Absecon EMS had "approximately ten" part-time employees in September 2013.  Pl. Ex. 2 at 45:9-10.  This is a sufficient headcount for Defendant to establish exemption.

With regard to whether Plaintiff directed these employees' work, it was Plaintiff's testimony that he was in charge of "[o]verall operations of the squad."  Def.'s Ex. A at 25:11; see also McDowell, 2005 WL 3132192, at *12 ("Indeed, Plaintiff considered himself the 'supervisor for EMS.'").  Plaintiff testified he was in charge of discipline of employees and their annual reviews.  Id. at 25:12-20.  Plaintiff also admits that he "was in charge of squad operations with respect to the proper

24

operation and staffing of the ambulance."  Counter SOF ¶ 20.

Again, this is confirmed by the by-laws which lay out the duties

Plaintiff was expected to undertake.  Def.'s Ex. B at Art. 5, §

5(c).  Indeed, it was Plaintiff's own testimony – at least on

the issue of compensation – that there was a chain of command

and "[a]ll the employees report to me."  Def.'s Ex. C at 55:21.

It is not necessary for Defendant to demonstrate Plaintiff was

the ultimate authority on all issues at all times.  See

McDowell, 2005 WL 3132192, at *12 ("An employee, however, need

not be the ultimate authority on all decisions in order to

qualify as an executive for purposes of an exemption under the

FLSA.") (citing 29 C.F.R. § 541.105(d)).  Defendant has shown –

through uncontested facts and the lack of any genuine issue –

that Plaintiff had significant responsibilities for staffing,

discipline, hiring, firing, and review of the employees at

Absecon EMS.  This is sufficient to establish that Plaintiff

directed their work.

    As such, for purposes of summary judgment, Defendant has

carried its burden of demonstrating that there is no genuine

dispute of fact that Plaintiff directed the work of the

equivalent of two full-time employees.

### 3. **Hiring and Firing Authority**

    The factual record before the Court also makes clear that

there is no genuine dispute that Plaintiff had executive-

employee level hiring and firing authority.  Specifically, the
regulations indicate that a bona fide executive employee "has
the authority to hire or fire other employees" or that his or
her "suggestions and recommendations as to the hiring, firing,
advancement, promotion or any other change of status of other
employees are given particular weight."  29 C.F.R. § 541.100.

Most notably, when asked in his deposition whether he was
in charge of hiring and firing employees, Plaintiff answered
unequivocally: "Yes."  Def.'s Ex. A 25:12-14.  Plaintiff
similarly testified that he was in charge of review and
discipline of employees as well.  Id. at 25:15-20.  Mr. Young
also agreed that Plaintiff was authorized to hire people,
although "he was supposed to go through the trustees."  Def.'s
Ex. F at 13:10-17; see also id. 16:7-10 ("Q: You also said
[Plaintiff] would hire people, and it would increase the cost of
worker's comp.  Is that correct? [Mr. Young]: Yeah.").
Plaintiff admitted that he fired Mr. Busch's daughter for
drinking vodka while working.  Pl.'s Ex. 1 at 135:19-22 ("Q: Did
[Mr. Busch] ever tell you that you couldn't terminate his
daughter? [Plaintiff]:  He was mad that we terminated her.  He
never said we couldn't terminate her.").  Mr. Busch described
the event as follows:

Q.   Was [your daughter] terminated?

26

> **A.**   When [Plaintiff] came to me, I will explain,
> [Plaintiff] came to me and said, [w]e'll have to
> let Sarah go.  And I said, [c]an she resign in
> lieu of termination?  And he said, [i]f I have
> it today.  So she handed in a resignation and
> processed unemployment application resignation
> in lieu – in the face of termination and she
> received unemployment benefits.

Def.'s Ex. D at 89:11-19.

Plaintiff's contention that the Trustees' involvement in
the hiring process means Plaintiff does not qualify as an exempt
employee is incorrect.  As an initial matter, the argument that
the Board played any role whatsoever in the hiring and firing of
employees is scantly supported by the record.  Mr. Young did
testify Plaintiff was "supposed to" go through the Board for his
hiring decisions, but that did not stop Mr. Young from stating
that Plaintiff did have authority to hire employees.  Def.'s Ex.
F at 13:10-17.  But, even if the Board did play some
confirmatory role in Plaintiff's personnel decisions, that would
not defeat a finding of Plaintiff being an executive.  The
applicable regulations specifically clarify that Plaintiff is an
executive if his suggestions or recommendations are given
"particular weight."  Here, where evidence of Plaintiff firing
employees has been put forth, where Plaintiff has fully claimed
the responsibility for hiring and firing, and where Mr. Young
has confirmed that authority with only the minor caveat that
Plaintiff was to run his hiring decisions by the Board, the

27

Court finds that Defendant has carried its burden.  See
McDowell, 2005 WL 3132192, at *12 ("[W]hile not having the
ultimate authority to interview and select employees, Plaintiff
did play a part in the hiring process for both full and part-
time personnel.").  Accordingly, for purposes of summary
judgment, Defendant has established this final element of
executive exemption.

Because the Court thus determines that there is no genuine
dispute of material fact with regard to whether Plaintiff was a
bona fide executive employee for the above reasons, the Court
determines that Plaintiff is exempt from the requirements of
FLSA.  As such, summary judgment in favor of Defendant is proper
with regard to Plaintiff's FLSA claim.

### ii.  Emergency Medical Technician Exception

Plaintiff also raises 29 C.F.R. § 541.3(b)(1) as a bar to
his exemption.  That regulation notes that executive exemptions
do not apply to "emergency medical technicians" and other first
responders for their field work, regardless of their rank or pay
level.  Id.  According to that regulation "[s]uch employees do
not qualify as exempt executive employees because their primary
duty is not management of the enterprise in which the employee
is employed or a customarily recognized department."  As such,
"a police officer or firefighter whose primary duty is to
investigate crimes or fight fires is not exempt . . . merely

because the police officer or fire fighter also directs the work
of other employees in the conduct of an investigation or
fighting a fire." Id. at § 541.3(b)(2).

   The Court finds this section to be inapplicable to the
instant case because Plaintiff's primary duties were not the
directing of work while responding to emergencies, but rather
the management of the enterprise so that Absecon EMS could
deploy EMTs to emergencies.  29 C.F.R. § 541.3(b)(1) does not
act as a bar for anyone who works in affiliation with the first
responders listed, but rather exempts first responders "so long
as their primary duty is emergency response or law enforcement."
Carey v. Nationation Event Services, Inc., Civ. No. 14-05006,
2015 WL 667519, at *5 (E.D. Pa. Feb. 13, 2015).  This regulation
serves simply to exclude managerial work that is "performed
concurrently with front-line first responder work." Id.  None
of the duties upon which the Court has determined Plaintiff was
an exempt executive were performed concurrently with front line
work.  As such, the exception for first responders contained in
the applicable regulations does not apply.

   **B. Plaintiff's Remaining Claims**

   Because this Court has granted summary judgment in
Defendant's favor regarding the FLSA claim over which it had
original jurisdiction, the only remaining claims are for unjust
enrichment and violation of CEPA.  "Once the claims over which a

29

district court has original jurisdiction have been dismissed, a
court may decline to exercise jurisdiction over supplemental
state claims unless extraordinary circumstances exist.  Husain
v. Casino Control Com'n, Civ. No. 06-4923 (RMB), 2007 WL
2375034, at *5 (D.N.J. Aug. 14, 2007) (citing 28 U.S.C.
1367(c)(3) ("The district courts may decline to exercise
supplemental jurisdiction over a claim under subsection (a) if-
(3) the district court has dismissed all claims over which it
has original jurisdiction.")); see also Hedges v. Musco, 204
F.3d 109, 123 (3d Cir. 2000) (upholding a district court's
decision to refuse to exercise supplemental jurisdiction over
remaining state law claims).

       This Court finds no extraordinary circumstances are present
requiring the exercise of jurisdiction.  Accordingly, because
this matter was removed to this Court from the Superior Court of
New Jersey Law Division, Atlantic County, the remaining state-
law unjust enrichment and CEPA claims are remanded to that
court.

**IV.   <u>CONCLUSION</u>**

       As outlined above, the Court finds that Plaintiff is an
exempt executive employee for purposes of the FLSA.  As such,
Defendant's motion for summary judgment on that claim is GRANTED
in its favor.  Because this Court declines to exercise
jurisdiction over the remaining New Jersey state-law claims,

including any cross-claims, those claims will be remanded to the Superior Court of New Jersey Law Division, Atlantic County.

DATED: September 22, 2016

s/Renée Marie Bumb
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE